Dorothy DORSEY; Doreen Brooks; Priscilla Victoria Jones; Vanessa Bailey; Addie O. Brown; Shirley Wise; Claremont Homes Tenant Council, Plaintiffs–Appellants,

v.

HOUSING AUTHORITY OF BALTIMORE CITY, A Municipal Corporation; Robert W. Hearn, Individually and in his capacity as Executive Director of the Housing Authority of Baltimore City; Juanita Clark Harris, Individually and in her official capacity as Deputy Director of the Housing Authority of Baltimore City; U.S. Department of Housing & Urban Development; Jack Kemp, in his official capacity as Secretary of the United States Department of Housing & Urban Development, Defendants–Appellees.

No. 92–1381.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 26, 1992.

Decided Jan. 26, 1993.

Barbara Ann Samuels, Legal Aid Bureau, Inc., Baltimore, MD, argued (Joy R. Sakamoto–Wengel, Legal Aid Bureau, Inc., on brief), for appellants.

John H. Morris, Jr., Venable, Baetjer & Howard, and Donna Carol Sanger, Asst. U.S. Atty. Office of the U.S. Atty., Baltimore, MD, argued (Richard D. Bennett, U.S. Atty., Office of the U.S. Atty., Sally B. Gold, Hylton & Gonzales, Baltimore, MD, and Peter M. Campanella, Ann E. Harrison, and Paul A. Feiner, U.S. Dept. of Housing & Urban Development, Philadelphia, PA, on brief), for appellees.

Before MURNAGHAN, Circuit Judge, CHAPMAN, Senior Circuit Judge, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.

## OPINION

MURNAGHAN, Circuit Judge:

Plaintiffs, low income housing residents and a public housing tenant organization, charged the Housing Authority of Baltimore (HABC) and two HABC Directors with failing to comply with the Brooke Amendment to the United States Housing Act of 1937 and the Department of Housing and Urban Development (HUD) regulations promulgated thereunder. The Brooke Amendment requires public housing authorities (PHAs) to charge tenants no more than 30% of their income for rent, which is to include a reasonable allowance for utilities. HUD regulations provide guidelines for PHAs to determine utility allowances. Tenants claimed that HABC's failure to comply with the regulations constituted a violation of 42 U.S.C. § 1983 and a deprivation of due process under the Fourteenth and Fifth Amendments.

The district court divided plaintiff's claims into "substantive" and "procedural" claims. It understood the substantive charges to be attacking the validity of the actual allowances determined by the PHA as arbitrary and capricious. It understood as procedural plaintiffs' claims that HABC failed to provide prior notice and opportunity for comment on proposed schedules of allowances; failed to provide tenants an opportunity to inspect the record on which allowances are based and conduct annual reviews of the schedules; failed to establish procedures and criteria for granting individual relief from improper surcharges; and failed to provide notice concerning tenant's rights to grieve a disputed charge. It did not classify—or address—plaintiffs' claims that HABC violated the regulations by failing to adopt any allowances in response to the adoption of the current regulations (the Final Rule) but continued to use allowances adopted under the old regulations (the Interim Rule).

Upon cross-motions for summary judgment, the district court held that the Tenants did not show any facts to support the substantive claim that the allowances were unreasonable. The court then held that the Final Rule's procedural mandates did not create rights enforceable in a court of law. As for plaintiffs' § 1983 claims and due process claims, plaintiffs had no right to enforce the procedural mandates of the HUD utility allowance regulations absent a cognizable claim of a substantive violation of the Final Rule, which, the court had already determined, did not exist. Finally, the court determined that even if procedural requirements were enforceable by plaintiffs, the record disclosed adequate notice and opportunity. Accordingly, the court declined to grant plaintiff's Motion for Partial Summary Judgment and granted HABC's Motion for Summary Judgment.

Plaintiffs also charged HUD and Secretary Jack Kemp with violating the Brooke Amendment and the Final Rule by failing to ensure HABC's compliance. The district court granted summary judgment to the federal defendants because the claims against HABC had been found to be without merit and because plaintiffs lacked standing.

Tenants herein appeal dismissal of their Motion for Partial Summary Judgment as well as the grant of HABC's and HUD's Motions for Summary Judgment. Tenants also appeal a post-hearing determination of the district court to deny its Motion to

Alter or Amend the Judgment based on a requested (and denied) consideration of evidence submitted after the hearing as a supplemental exhibit. The evidence was a just-issued HUD Utilities Review of HABC's utility administration, which made specific findings that HABC's system for surcharging tenants for utilities was neither fair nor accurate, that the allowances had not been developed in accordance with law, and that HABC had failed to provide tenants an opportunity to comment on the allowances.

We find that the district court erred when it granted summary judgment to HABC. Plaintiffs have raised genuine issues of fact over whether the allowances, as established, are reasonable and in conformance with the Final Rule. The same questions surround the partial summary judgment effort of the plaintiffs. Therefore, we reverse the grant of summary judgment to HABC and affirm the denial of summary judgment to the plaintiffs. We also affirm the dismissal of the federal defendants.

## I. *The Statutory Scheme*

The Brooke Amendment to the United States Housing Act of 1937 places a ceiling on the amount a PHA can charge tenants for rent. 42 U.S.C. § 1437a. Under the Act, PHAs may charge a maximum of 30% of the tenant's adjusted income for rent; rent is understood to cover both shelter and a reasonable amount of utilities. When a tenant exceeds the utility allowance, she will be surcharged for the amount in excess of the allowance. The utility allowance—the amount of utility consumption to be included in the rent calculation—is determined by the local PHA in accordance with HUD regulations. The current regulations, codified at 24 C.F.R. § 965.470 *et seq.*, became effective October 2, 1984, and have been referred to throughout this litigation as the "Final Rule."

The Final Rule replaced the Interim Rule and established new standards for the determination of allowances by a PHA, reflecting a new focus on utility conservation. While the old regulations tied allowance levels to the level of actual past consumption, the new regulations were designed to provide incentives for economizing on utility use to the extent that such economizing was within the tenant's control.

To comply with the Final Rule, a PHA "shall establish Allowances in accordance with the standards in § 965.476 not later than 180 days after the effective date of this rule," § 965.480, and must determine the appropriate level of allowance based on:

> a reasonable consumption of utilities by an energy-conservative household of modest circumstances consistent with the requirements of a safe, sanitary and healthful living environment.... [E]xcess consumption which may result in a Surcharge ... should be ... reasonably within the control of a tenant household to avoid.

§ 965.476(a). More specifically, the allowances must include reasonable consumption for major equipment or utilities furnished to tenants by the PHA, essential equipment whether furnished or not, and minor items of equipment furnished by tenants. § 965.476(b). The regulations direct the PHA to take into account relevant factors in establishing the allowances including the equipment and functions to be covered by the allowance, the energy efficiency of PHA-supplied appliances and equipment, climate, dwelling unit size, number of occupants, type of construction and project design, the physical condition of the project, and intended temperature levels. § 965.476(d)(1)–(8). Finally, the regulations give the PHA discretion in determining its method of establishing allowances, but recommend five sources of energy consumption data upon which it might rely. These sources include actual consumption data obtained from utility suppliers, from the PHA's records, from governmental sources and energy audits. § 965.476(c)(1)–(5).

The Final Rule adopted the APA standard of review: "PHA's determinations of Allowances ... shall be final and valid as to tenants unless found to be arbitrary, capricious, an abuse of discretion, or other-

wise not in accordance with law." § 965.-473(e).

Section 965.473(a)–(c) contains the Final Rule's record-keeping and notice provisions. In establishing allowances, the PHA must maintain an administrative record documenting the basis for the allowances, and make the record available for tenant inspection. At least 60 days before the effective date of the proposed allowances and scheduled surcharges and revisions, the PHA is required to give notice to all tenants describing the basis for the determination of allowances and including a statement of the specific equipment included in determining the allowances. In addition, the PHA must provide all tenants an "opportunity to submit written comments during a period expiring not less than 30 days prior to effective date of the allowances or revisions." § 965.473(c). Finally, the PHA "shall review at least annually the basis on which Utility Allowances have been established ... The review shall include all changes in circumstances ... indicating probability of a significant change in reasonable consumption requirements." § 965.478(a).

## II. *Facts*

The HABC is a local public housing authority largely funded by HUD, and is responsible for operating about sixty low-income housing projects with more than 18,000 units in Baltimore City.

The named plaintiffs are all female public housing residents, and represent a class consisting of all tenants who reside in public housing units owned or operated by HABC. Each named plaintiff submits affidavits describing the size unit she lives in, the number of people residing in her unit, the appliances she owns, the frequency with which the appliances are used, the surcharges she has received, her rent and income, her efforts to be energy conscious, and her efforts to contest the surcharges. Two of the plaintiffs also attest to their involvement with the Resident Advisory Board (RAB) and Tenant Councils and their struggles with the on-going problem of surcharges over the years. The affidavits paint a picture of erratic and unexplained surcharges that bear no relation to efforts to be energy-conservative.

All HABC tenants sign a standard lease, which states that a tenant is required to pay for the consumption of electricity in excess of the allowances established by HABC. The lease states that copies of the allowance schedules are posted in the management offices of each project. The lease also sets out a general tenant Grievance Policy and Appeals Procedure, which applies to individual but not class grievances. Under this Procedure, a tenant can contest an individual surcharge as miscalculated or not within the allowance, but cannot contest the allowance itself. Several plaintiffs' affidavits stated that when they complained about excessive surcharges, they were not told they could grieve the complaint, and were told that rent would not be accepted without payment of the surcharge. Other plaintiffs testified that they were reluctant to fight the surcharges because they were afraid of losing their apartments.

In 1979 and 1980, HABC reviewed and revised its allowances in response to notification from HUD that it would soon issue new regulations (the Interim Rule) covering allowances for electricity consumption. In the course of this revision, HABC compared allowance schedules of different projects, compiled lists of commonly-used utilities and appliances, secured information from the Baltimore Gas and Electric Company (BG & E) about projected electrical consumption of each appliance given normal use, developed benchmarks taking into account unit size, and plotted actual consumption of electricity for a substantial number of dwelling units. It then set the allowances to comply with the Interim Rule target of no surcharges for 90% of units.

In August of 1981, HUD published a new proposed regulation (the Final Rule), which was designed to promote energy conservation. The Final Rule took effect in October of 1984, and HABC concedes that it has not adopted new allowances since before that time. HABC contends, via the affidavit of G. Markowitz, Assistant Director–Staff,

that it reviewed its existing allowances after the Final Rule became effective, and determined that they were in compliance with the Final Rule. Markowitz was not personally involved in the review and HABC presents no documentation of the review or its findings.

In 1989, an HABC utility specialist recommended an increase of consumption allowances of 10% for one to four bedroom units and 20% for five and six bedroom units, based on his finding that 40% of the HABC units received quarterly surcharges at least once yearly between 1983 and 1988. HABC consulted with HUD, and rejected the specialist's proposal after HUD informed them that a high incidence of surcharges did not mandate an increase under the Final Rule.

In the fall of 1989, the Legal Aid Bureau on behalf of Tenants met with HABC to negotiate about the allowances. As a result, HABC implemented an annualized system to surcharge billing for electricity. Since tenants do not receive a rebate for consuming less than their quarterly allowances, the switch from quarterly to annual billing was designed to decrease the amount of surcharges imposed on tenants whose consumption occasionally exceeds the allowances. In conjunction with the phase-in of that billing system, HABC has temporarily increased all allowances by fifteen percent, but intends to return to its previous allowances after it has fully implemented the annual billing system.

The HABC—Legal Aid meetings also dealt with charges that managers of certain HABC developments were refusing to accept rent payments that were not accompanied by the full payment for electricity. In the fall of 1990, HABC directed its personnel to accept rent payments without the surcharge and to direct tenants to file grievances concerning the surcharges. HABC also began to print a notice on the back of surcharge bills that tenants had the right to grieve the surcharges.

HABC has consistently experienced difficulty in ensuring that tenants' electric meters are properly read and surcharges properly billed to tenants. HABC has attempted to correct the problem and has implemented a system to flag for review surcharges of over $75. The incidence of surcharges due to administrative error is a continuing problem and is higher in some projects than in others.

At about the time that the case was argued below, HUD was completing a review of HABC's utility operations. HUD's last prior formal review had been in 1983, before the Final Rule came into effect. In 1987–88, HUD officials informally reviewed HABC's allowances and concluded that HABC "appears to have complied with the requirements of the Final Rule." HUD's 1992 Formal Utility Review was based on records which also had been submitted to the district court as part of the proceedings below. The HUD Utilities Review concluded:

> Given the absence of *organized* data which provide the basis for the determination of allowances, it is not clear that HABC's allowances for electricity have been properly designed. Acknowledged are many data sources ... and the authority's efforts to convert this information into allowances using the standards of the Interim Rule, but it has not been demonstrated that this satisfies the requirements of the Final Rule.... HABC has not made it clear which types of appliances or other named factors are included [or not] in the consumption calculations for allowances.

The Plaintiffs offered this new evidence to the district court immediately upon its issuance, after the district court hearing but before the court had rendered its opinion. The district court refused to admit the supplemental evidence, and denied plaintiff's motion to alter or amend the judgment pursuant to Fed.R.Civ.P. 59(e).

### III. *Discussion*

#### A. *Local Defendants*

In 1987 the Supreme Court held that the Brooke Amendment conferred enforceable rights upon public housing tenants. *Wright v. Roanoke Redevelopment & Housing Authority,* 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987). Tenants claim

that *Wright* establishes that both the substantive guidelines and procedural requirements contained in HUD's utility allowance regulations are binding on PHAs and enforceable by tenants. HABC argues that the case merely allows a housing tenant to sue under 42 U.S.C. § 1983 to challenge the reasonableness of an allowance, but does not support a private action to enforce procedural requirements that do not render an allowance determination arbitrary and capricious. HABC argues that in any case *Wright* applies only to the Interim Rule, which preceded and differed from the Final Rule, and so is inapplicable in the instant case.

In *Wright*, low-income petitioners sued under 42 U.S.C. § 1983 alleging that respondent had violated the Brooke Amendment and the Interim Rule regulations and overbilled them for utilities. The Supreme Court reversed the appellate court's determination that the Amendment conferred rights enforceable only by HUD. *See Wright v. City of Roanoke Redevelopment & Housing Authority*, 771 F.2d 833 (4th Cir.1985). The plaintiffs originally sought injunctive relief and damages for overcharges. On appeal, they dropped their claim for injunctive relief, conceding that the newly issued Final Rule—which dropped the Interim Rule's requirement that allowances be set so that 90% of a PHA's units do not pay surcharges—had mooted that claim.

The Supreme Court thus was not faced with determining whether respondents violated procedural requirements peculiar to the Final Rule. However, it is not clear, as HABC would have it, that the Court's determination that petitioners had enforceable rights under the Brooke Amendment was limited to a substantive review of allowances under an arbitrary and capricious standard. Nor is it clear that *Wright* is applicable only to the Interim Rule.

The Supreme Court did not demarcate its analysis as pertaining to either the Interim Rule or the Final Rule. The case clearly was brought under the former, yet the Court repeatedly referred to the regulations later adopted in the Final Rule, citing them as additional evidence that there is a private right of action under the Brooke Amendment to enforce the regulations. *See Wright*, 479 U.S. at 426, 427, 429, 107 S.Ct. at 771, 772, 773. The Court was well aware of the changes in regulations from the Interim to the Final Rule, and did not exempt the Final Rule's new requirements from its holding that the regulations created enforceable rights.

Nor did the Supreme Court make a distinction between "substantive" and "procedural" HUD regulations. "The Regulations ... have the force of law, ... they specifically set out the guidelines that the PHAs were to follow in establishing utility allowances, and they require notice to tenants and an opportunity to comment on proposed allowances." *Wright*, 479 U.S. at 431, 107 S.Ct. at 774.

The district court, however, treated the Final Rule requirement that allowances be reasonable separate from the adoption, notice, and opportunity-to-comment requirements. The separate treatment of substantive and procedural regulations led the court into a rationale whereby it found no evidence to support a dispute over whether the regulations were reasonable only after first eliminating from review some of the very evidence the plaintiffs offered to support the claim that they were not.

The district court first decided that the Tenants had shown no facts to demonstrate that the allowances themselves were unreasonable. The court noted that under the Final Rule the PHA has wide discretion in setting allowances. The PHA is directed to use a prescriptive rather than descriptive standard, and may, according to the district court, disregard statistical evidence of consumption and exclude major appliances from its calculations without running afoul of the regulations. Thus Tenants' reliance on their own declarations concerning their consumption of electricity, their efforts to economize, and the statistical evidence of excessive surcharge occurrences were deemed insufficient to indicate that the allowances were arbitrary and capricious.

The district court then found that the plaintiff's claims of procedural deficien-

cies—the claims that tenants had not been given notice and opportunity to review the record on which allowances were based and make comments before their adoption—were without merit. It held that the procedural requirements of the Final Rule did not constitute a source of rights enforceable by the Tenants. Even if they were enforceable, however, the court held that the notice and opportunity requirements in the Final Rule were not applicable to the allowances currently in effect and were at any rate substantially followed. The allowances had not been amended since the Final Rule had become effective, the court noted, and the notice requirements in the Final Rule applied only to *proposed* allowances and revisions. Moreover, notice and opportunity to comment had been given in 1982, when the allowances now in effect were first adopted.

We do not agree, on the basis of the record before us, that the procedural requirements are inapplicable to the current allowances or that they were substantially followed. Under the Final Rule, PHAs are directed to adopt allowances, to do so after giving notice and an opportunity to comment to tenants, and to keep records documenting the bases for the allowances. The PHA has conceded that it did not adopt new allowances, and therefore cannot claim that it gave, with respect to things not in existence, notice or opportunity to comment.

Failure to consider and, where appropriate revise, Interim Rule allowances amounted to a proposal to keep in effect existing allowances. The PHA claims it kept the old allowances in effect because they were consistent with the new regulations. However, it provides no record documenting that finding or supporting the assertion that the finding was reasonable. The contention that Tenants had notice and opportunity to comment on the allowances when they were adopted in 1982 begs the question. Under the Final Rule the entire rationale behind the adoption of allowances changed. For the right to notice and opportunity to comment to be meaningful, Tenants should have had the right, at the very least, to comment upon the PHA's decision *not* to alter the allowances or to re-adopt the extant ones.

The district court's conclusion that the procedural requirements of record-keeping, notice, and an opportunity to comment were substantially followed or were inapplicable was tantamount to a conclusion that the formal adoption of allowances pursuant to the Final Rule was a needless formality. That conclusion flowed from its earlier determination that the old allowances were reasonable and consistent with the new guidelines. Yet the record before the district court did not support that determination.

The district court put great stock in the Markowitz statement that the PHA had reviewed the old allowances and found them consistent with the Final Rule. However, HABC did not present any administrative record of that review. Markowitz was not personally involved in the review and made his statement on the basis of an administrative review of documents, all of which were gathered and analyzed well before the Final Rule came into effect. Yet, under the new regulations, PHAs are required to consider specified factors in calculating the allowance, factors they were not required to consider under the old regulation. *See* 24 C.F.R. § 965.476. There is no evidence that those factors were considered.

It is true, as the district court pointed out, that the Final Rule does not mandate consideration of the percentage of surcharges in determining a "reasonable" allowance. It does, however, recommend such a consideration as one means of setting the allowance, and makes it clear that excessive surcharging is material evidence that "the PHA standard is out-of-line with the Section 965.476 standard, or that excess consumption may be due to factors not within the control of the tenants." 49 Fed. Reg. 31406. Commentary to the Final Rule shows that, while HUD provided only minimal guidelines to the PHAs in distinguishing between consumption generated by necessary and luxury appliances, it "expect[ed] that this division w[ould] reflect

local usage and custom patterns." 49 Fed. Reg. 31404. In fact, all of the Rule's recommended sources of data for determining reasonable allowances consisted of actual consumption data, implying that reasonableness must bear some relation to use.[*]

The PHA may have made reasonable efforts to set allowances back in the early eighties, pursuant to the Interim Rule. However, nothing in the record attests to rational decision-making based upon the guidelines put forth in the Final Rule. With no administrative record to attest to whether the factors set forth in the Rule were indeed considered, it is impossible to conclude that the allowances were not arbitrary and capricious. The Final Rule specifically directs PHAs to document its reviews. Moreover, under the arbitrary and capricious standard of review of an agency's action

> the agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." [citations omitted] In reviewing that explanation, we must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971).

In sum, HABC's failure to adopt new allowances pursuant to the Final Rule, to provide a record demonstrating that the bases upon which the PHA determined that new allowances need not be adopted, or to provide notice and opportunity to comment on that determination indicates to us that the district court erred in finding that the "procedural" requirements of the Final Rule were inapplicable or substantially followed.

We turn now to the district court's holding that the procedural requirements of the Final Rule do not create enforceable rights. It justified that holding by noting that nothing in the Final Rule indicated that HUD contemplated a review of its procedural requirements, and therefore that HUD's interpretation of the Rule should be controlling.

The Supreme Court held in *Wright* that a private cause of action existed to enforce the Brooke Amendment and its implementing regulations. It found that the standard of reasonableness was capable of judicial review and enforcement. We do not read *Wright* as supporting the contention that procedural requirements do not create enforceable rights, nor as authorizing a separate analysis of substantive and procedural aspects of the Final Rule. The Final Rule regulations in their entirety operate to define the contours of reasonableness. If a portion of the regulations is deemed unreviewable, the reasonableness of allowances becomes incapable of review. Given the Supreme Court's conclusion in *Wright* that the Brooke Amendment afforded Tenants a private cause of action to enforce the reasonability of utility allowances, it is untenable that HUD could, simply by revising regulations and thereby carving out a subset of procedural and therefore unenforceable rights, foreclose a remedy the Court and Congress had left open.

*Wilder v. Virginia Hosp. Assn.*, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1989), supports our conclusion that the regulations in their entirety must inform the reasonableness of a utility allowance. *Wilder* held that the Boren Amendment created enforceable rights, and drew upon the analysis in the earlier *Wright* decision. In *Wright*, the *Wilder* Court noted, the provision for a reasonable utility allotment in the Brooke Amendment was enforceable because the regulations set out detailed

---

[*] The only criteria specifically asserted by the HABC as justifying its decision not to revise the allowances after the Final Rule became effective was that consumption by HABC tenants had remained stable during the period since the adoption of the Final Rule, a criteria not mentioned in the guidelines, and suspect for two

reasons. First, the data offered in support of this conclusion was gathered not for purposes of a review of the allowances but as part of the budget process. Second, the data was based on overall HABC consumption, including consumption for maintenance facilities, common, and exterior areas not attributable to tenants.

guidelines for the housing authorities to follow in determining it. *Id.* at 511, 110 S.Ct. at 2518. *See also Suter v. Artist M.,* — U.S. ——, ——, 112 S.Ct. 1360, 1366–68, 118 L.Ed.2d 1 (1992) (finding that the Adoption Assistance and Child Welfare Act of 1980 does not create an enforceable right by private individuals because the Act provided no "further statutory guidance [ ] as to how 'reasonable efforts' are to be measured," and distinguishing *Wright,* where the HUD regulations "further defined how th[e] term [reasonableness] would be measured").

The *Wilder* Court also rejected a division of regulatory mandates into procedural and substantive regulations. The dissent would have held that only the procedural requirements of the Boren Amendment were enforceable. *Id.* 496 U.S. at 513, 527–28, 110 S.Ct. at 2519, 2526–27. The procedural requirements at issue were regulations requiring certain procedures and steps to be taken in establishing reasonable and adequate reimbursement rates. The majority found that limiting review to the procedural requirements alone would render the entire provision meaningless. *Id.* at 514, 110 S.Ct. at 2519.

In the instant case, the district court's separation of regulations and elimination from review of a portion of them limited the scope of its review so as effectively to preclude a finding of a genuine dispute on whether the allowances were reasonable. We thus reverse the district court's determination that Tenants have no enforceable rights to challenge procedural violations of the regulations promulgated under the Brooke Amendment. We find further that when all of the claims of violations of the regulations are considered as evidence of the reasonability of the allowances, and the record is read in the light most favorable to the Tenants, the grant of summary judgment to defendants was error.

Tenants contended that allowances were never adopted pursuant to the Final Rule and that the review of previous allowances to determine their consistency with the new Rule was not adequately documented, nor conducted after notice and an opportunity to comment by Tenants. They submitted the affidavits of Tenants who attested to energy conservative utility consumption but who nonetheless consistently received excessive surcharges. They provided evidence that the occurrence of surcharging was as high as 75% percent, giving rise to an inference that the allowances were inadequate to provide for reasonable consumption by an energy-conservative household of modest means. HABC, on the other hand, conceded that it had not adopted new allowances or formally re-adopted the old ones after notice and opportunity to comment. It failed to produce a record of the criteria and data used to determine that the old allowances were consistent with the New Rule's guidelines and mandate of reasonableness. Although it asserted that the incidence of surcharges was irrelevant to the reasonableness of allowances, it offered no evidence of the rational bases it claimed that it used to determine that level. While it contended that Tenants' surcharge data were questionable because of admitted meter reading and billing problems, it presented no evidence showing that tenant consumption was due to non-energy conservative consumption.

█ In addition, the questions raised by the HUD Utilities Review as to the adequacy of HABC's process of establishing allowances constitute additional evidence that the allowances are unreasonable. The district court's refusal to consider the HUD Utilities Review as supplemental evidence was an abuse of its discretion in light of *Boryan v. United States,* 884 F.2d 767 (4th Cir.1989). Under *Boryan,* a moving party must demonstrate that the supplemental evidence is newly discovered, that due diligence to discover the evidence was previously exercised, that the evidence was material and not merely cumulative or impeaching, and is likely to produce a new outcome if the case were retried. The Review was not available until the time it was submitted and was material in light of the fact that the HUD Utilities Review concluded that "it has not been demonstrated that [the authorities'] efforts to convert this information into allowances using the standards of the Interim Rule satisfies the re-

quirements of the Final Rule." The record upon which the district court made its conclusions was extensive, and dealt with statistics not easily interpreted by those unfamiliar with utilities review processes. The court should welcome HUD's appraisal of HABC's compliance with regulations, given its concern for deference to agency interpretations of its own regulations. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) ("The principle of deference to administrative interpretations has been consistently followed by this Court whenever ... a full understanding of the force of the statutory policy in the given situation has depended upon more than ordinary knowledge").

■ Because genuine issues of material fact remain, we affirm the district court's denial of partial summary judgment to the plaintiffs. Tenants' request for summary judgment rested on its contention that any violation of any requirement under the act was actionable. Although all violations of the regulations are actionable, some regulatory mandates are more or less important to the overall directive to set reasonable allowances than others, and not every violation will necessarily render a PHA's allowances, or its method of setting them, arbitrary and capricious. The long list of divergences from the regulations charged in this particular case cannot be disregarded. Taken together they constitute evidence that is pertinent to the evaluation of whether the allowances are reasonable. But our view that the regulations as a whole define the contours of reasonability precludes us from the piecemeal evaluation of procedural regulations, separate from the evaluation of the reasonableness of the allowances, that the grant of partial summary judgment to the Tenants would require. The question must be considered as a whole and the district court's failure to consider some aspects of the question leaves us without support for a grant of partial summary judgment.

## B. *Federal Defendants*

Tenants' claims against the federal defendants were premised on the failure of HUD to ensure HABC's compliance with the Brooke Amendment and the Final Rule. The district court granted summary judgment to HUD on the basis that the Tenants had not established a claim against HABC and therefore could not have one against HUD. The court granted summary judgment on the alternative basis that the Tenants lacked standing.

■ We affirm the district court's dismissal of the claims against HUD, but on somewhat different grounds. A plaintiff must show, in addition to Article III standing, that her injury can be fairly traced to the challenged action and that the injury can be redressed by a favorable decision. *Valley Forge Christian College v. Americans United for Separation of Church & State,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). In the instant case, the injury of excessive surcharges cannot be fairly traced to HUD. Under the Final Rule regulations, HUD does not establish utility allowances, amend or revise utility allowances, nor approve them before they become effective. The Final Rule provides only that the PHA furnish HUD with a copy of its allowances promptly after they become effective. If HABC's utility allowances are in fact inadequate, only HABC can revise them or adopt new ones. HUD has the authority to audit the PHAs, but does so on a formal basis only once every eight years. The letter from HUD stating that HABC "appeared to be in compliance" spoke only in terms of probability, was not a formal finding, and was conditioned upon review during subsequent formal audits. Tenants' contention that the injury of excessive surcharges, if proven, could be adequately redressed only if HUD is party to the action, since HUD provides most of the funds to HABC, is incorrect. HUD's financial obligation to HABC is a contractual one, and indeed HUD has conceded that it will honor that contractual obligation should HABC be compelled to pay damages.

Furthermore, HUD's monitoring role over the PHA's setting of allowances is committed to agency discretion. *See* 24

C.F.R. § 865.474 ("Schedules of Allowances ... *shall not* ordinarily be subject to approval by HUD before becoming effective ... HUD *may* require additional data concerning PHA's basis for determination of allowances or scheduled surcharges, *may* require additional or different relevant data to be considered ... and on an exception basis, *may* require that PHA submit its proposed revision ... for review and approval ..."). Under the Administrative Procedures Act, a decision not to undertake enforcement is presumed immune from judicial review. *See Sierra Club v. Larson*, 882 F.2d 128 (4th Cir.1989). In *Larson*, the Sierra Club sued two federal agencies alleging they had failed to force state compliance with the provisions of the Highway Beautification Act. The court explained that while the federal regulations provided guidelines to determine a state's compliance, the guidelines were "not standards which govern the threshold decision of whether to formally enforce the statute by withholding funds from a particular state." *Id.* at 132. *See also Heckler v. Chaney*, 470 U.S. 821, 827–35, 105 S.Ct. 1649, 1653–57, 84 L.Ed.2d 714 (1985) (agency decision not to take enforcement action is unreviewable unless Congress has indicated intent to circumscribe agency enforcement discretion and has provided meaningful standards for defining limits of that discretion); *Citizens to Preserve Overton Park*, 401 U.S. 402, 410, 91 S.Ct. 814, 820 (where a statute is drawn in such broad terms that in a given case there is no law to apply, judicial review is unavailable).

Tenants argue that this is not an agency inaction case, but that HUD acted affirmatively by approving utility allowances that patently violated the regulations. However, HUD approval of allowances is not mandated by the regulations, and there is no evidence that HUD's informal reviews and communications with HABC, however influential they might have been in affecting HABC's attitude toward its mandated responsibilities, should have been construed by either party as definitive approval that either alleviated HABC of its responsibility to follow the regulations, or made HUD responsible for its failure to do so. Since Congress, by its silence, left it to HUD's discretion to determine when and how it would exercise its general oversight authority to seek a PHA's compliance with regulations, we defer to the agency's reasonable interpretation of its duties. *See Monongahela Power Co. v. Reilly*, 980 F.2d 272 (4th Cir.1992) (deferring to EPA's reasonable interpretation of a statute and dismissing for lack of jurisdiction because Congress was silent as to whether the statute imposed non-discretionary duty).

HUD's Utility Review demonstrates HUD's appraisal of HABC's actions as inadequate. The Review comes somewhat late to have had the desired effect of encouraging HABC to adopt allowances pursuant to the Final Rule, but it was not overdue given the regulatory mandate of HUD's responsibilities. The Review demonstrates that HUD is not conspiring with HABC in its recalcitrance. We affirm the district court's dismissal of HUD.

## IV. *Conclusion*

In sum, and on the basis of the foregoing, we affirm the denial of partial summary judgment to plaintiffs and the dismissal of the action against HUD and Secretary Jack Kemp. We reverse the district court's grant of summary judgment to the other defendants and remand the case to proceed. The district court should consider all evidence, including the conclusions of the HUD Utilities Review and all of the divergences from the mandates of the Final Rule regulations, in determining whether HABC has been arbitrary and capricious in following the Final Rule regulations, resulting in unreasonable allowances in violation of the Brooke Amendment.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART, WITH INSTRUCTIONS.